1   Jeffrey A. Finn (CA 185248)
    jeffrey.finn@kattenlaw.com
2   Soyoung Jung (SBN 241003)
    soyoung.jung@kattenlaw.com
3   KATTEN MUCHIN ROSENMAN LLP
    2029 Century Park East, Suite 2600
4   Los Angeles, CA 90067-3012
    Telephone:   310.788.4400
5   Facsimile:   310.788.4471
6
7   Attorneys for Defendants D. RUSSELL PFLUEGER,
    DEVONREX, INC., PAIN CONCEPTS, INC., and
8   STEVEN BACICH

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  GREGG KLANG,                          ) | Case No. 13-CV-01971-JVS-DFM |
| 13                Plaintiff,              ) | **NOTICE OF MOTION AND MOTION** |
| 14        vs.                            ) | **BY DEFENDANTS D. RUSSELL PFLUEGER, STEVEN BACICH, DEVONREX, INC., AND PAIN CONCEPTS, INC. TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| 15  D. RUSSELL PFLUEGER, an              ) | |
|     individual, STEVEN BACICH, an        ) | |
| 16  individual; DEVONREX, INC., a        ) | |
|     corporation; PAIN CONCEPTS, INC., a  ) | |
| 17  corporation; STRYKER                 ) | |
|     CORPORATION, a corporation, and      ) | |
| 18  STRYKER PUERTO RICO, LIMITED,        ) | [Request for Judicial Notice and |
|     a corporation,                       ) | Proposed Order filed concurrently |
| 19                                       ) | herewith] |
| 20                Defendants.            ) | |
| 21                                       ) | Hon. James V. Selna |
| 22                                       ) | First Amended Complaint filed: |
|                                          ) | March 15, 2014 |
| 23                                       ) | Response Date:  April 25, 2014 |
| 24                                       ) | |
| 25                                       ) | Rule 16(b) Conference: May 19, 2014 |
|                                          ) | (11:30 A.M.) |

26

27

28

100482573

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendants D. Russell Pflueger, Steven Bacich, Devonrex, Inc., and Pain Concepts, Inc. ("Defendants"), by and through their attorneys, hereby move pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss the First Amended Complaint ("Amended Complaint"), filed by the Plaintiff Gregg Klang ("Klang") with prejudice and without leave to amend. The motion is made on the grounds that Plaintiff has not pled and cannot plead sufficient facts to establish his claims against the Defendants, or alternatively have not pled and cannot plead facts with sufficient particularity to establish his claims against Defendants.

This Motion is based upon this notice of motion and motion, the attached memorandum of points and authorities, the included Request for Judicial Notice ("RFJN") and exhibits, contents of the record and the Court file, and any written or oral submissions that may be presented at or before the hearing on this Motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 3, 2014.

### REQUEST FOR ORAL HEARING

Pursuant to Local Rule 7(f), defendants request an oral hearing on the foregoing motion.

Respectfully submitted,

Dated: April 25, 2014       KATTEN MUCHIN ROSENMAN LLP

By:    /s/ Jeffrey A. Finn
       Jeffrey A. Finn
Attorneys for Defendants D. RUSSELL
PFLUEGER, DEVONREX, INC., PAIN
CONCEPTS, INC., and STEVEN BACICH

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS ............................................. 2

    A.   Procedural History ....................................................................... 2

    B.   Allegations in the Amended Complaint ....................................... 3

III.  LEGAL STANDARDS .......................................................................... 4

IV.   ARGUMENT ......................................................................................... 4

    A.   Klang's Correction of Inventorship Claim under 35 U.S.C. §
        256 (Count 1) Should Be Dismissed for Failure to State a Claim ........ 4

        1.   Klang fails to allege facts showing conception of
            invention ............................................................................ 6

        2.   Klang fails to allege facts showing corroboration of
            conception ......................................................................... 9

        3.   Klang fails to allege facts showing communication of
            conception ....................................................................... 10

        4.   Klang fails to allege facts showing corroboration of
            communication ............................................................... 10

        5.   Section 256 is inapplicable for complete substitution of
            inventors where, as here, the parties did not collaborate .......... 11

    B.   Klang's Declaratory Judgment of Ownership Claim (Count 7)
        Should Be Dismissed ................................................................ 13

    C.   Counts 2-3, 6 and 8 Are Barred by Their Statutes of Limitations ...... 14

    D.   Klang's Claim for Fraud (Count 4) Fails to both State a Claim
        for Relief,  and Meet the Standard of Rule 9(b) ................................ 20

    E.   Klang's Claim for Fraudulent Concealment (Count 5) Fails to
        both State a Claim for Relief, and Meet the Standard of Rule
        9(b) ............................................................................................ 23

    F.   Klang's Claim Under Unfair Business Practices (Count 6)
        Should Be Dismissed for Failure to State a Claim ....................... 24

    G.   Klang's State Law Claims Under Counts 1-6 Are Preempted by
        the California Uniform Trade Secrets Act (Count 8) ........................ 25

CONCLUSION ............................................................................................... 25

i

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma*,
S.A.S., 771 F. Supp. 2d 32 (D.D.C., 2011) ..................................................9

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ....................................................................................4

*Bd. of Ed. ex rel. Florida State Univ. v. Am. Bioscience, Inc.*,
333 F.3d 1330 (Fed. Cir. 2003) ....................................................................5

*Beech Aircraft Corp. v. Edo Corp.*,
990 F.2d 1237 (Fed. Cir. 1993) ..................................................................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...........................................................................3, 4, 22

*Bemis v. Chevron Research Co.*,
599 F.2d 910 (9th Cir.1979) ........................................................................12

*Bly-Magee v. California*,
236 F.3d 1014 (9th Cir. 2001) ....................................................................23

*California Sansome Co. v. U.S. Gypsum*,
55 F.3d 1402 (9th Cir. 1995) ......................................................................15

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
43 Cal. 4th 375 (2008) ................................................................................24

*Clark v. Countrywide Home Loans, Inc.*,
732 F. Supp. 2d 1038 (E.D. Cal. 2010) ......................................................25

*Davis v. Reddy*,
620 F.2d 885 (CCPA 1980) ..........................................................................5

*Davis v. Uke*,
27 USPQ2d 1180 (Comm'r Pat. & Trademarks 1993) ................................7

*Dee v. Aukerman*,
625 F. Supp. 1427 (S.D. Ohio 1986) ..........................................................12

Katten

KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Ebeid ex rel. United States v. Lungwitz,*
    616 F.3d 993 (9th Cir. 2010) ................................................................ 4

*Eli Lilly & Co. v. Aradigm Corp.,*
    376 F.3d 1352 (Fed. Cir. 2004) ........................................................... 7

*Ethicon, Inc. v. U.S. Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) ................................................. 6, 9, 10

*Ethicon, Inc. v. U.S. Surgical Corp.,*
    954 F. Supp. 51 (D. Conn. 1997), *aff'd* 135 F.3d 1456 (Fed. Cir.
    1998) ........................................................................................... 11

*Federal Election Com'n v. Williams,*
    104 F.3d 237 (9th Cir. 1996) ......................................................... 20, 22

*Fox v. Ethicon Endo-Surgery, Inc.,*
    35 Cal. 4th 797 (2005) ............................................................. 14, 15, 16

*Gallardo v. DiCarlo,*
    203 F. Supp. 2d 1160 (C.D. Cal. 2002) ............................................. 15

*Gambro Lundia AB v. Baxter Healthcare,*
    110 F.3d 1573 (Fed. Cir. 1997) ........................................................... 5

*Gemstar-TV Guide International, Inc. v. U.S. Int'l Trade Comm'n,*
    383 F.3d 1352 (Fed. Cir. 2004) ........................................................... 8

*Gilman v. Dalby,*
    176 Cal. App. 4th 606 (2009) ............................................................ 24

*Guido v. Koopman,*
    1 Cal. App. 4th 837 (Cal. App. 1991) ................................................ 21

*Hedgewick v. Akers,*
    497 F.2d 905 (CCPA, 1974) ................................................................. 5

*Informatics Applications Group, Inc. v. Shkolnikov,*
    836 F. Supp. 2d 400 (E.D. Va., 2011) ................................................ 18

*Int'l Bus. Machines Corp. v. Zachariades,*
    No. C 91-20419, 1993 WL 443409 (N.D. Cal. Oct. 27, 1993),
    *aff'd,* 70 F.3d 1278 (9th Cir. 1995) (unpublished) ......................... 17

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iii

*Integrated Healthcare Holdings, Inc. v. Fitzgibbons*,
  140 Cal. App. 4th 515 (2006).............................................................................25

*Isr. Bio-Eng'g Project v. Amgen Inc.*,
  475 F.3d 1256 (Fed. Cir. 2007).........................................................................14

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980)........................................................................21, 22

*Johnson v. Lucent Techs. Inc.*,
  653 F.3d 1000 (9th Cir. 2011)............................................................................23

*K.C. Multimedia, Inc. v. Bank of America Technology & Operations,
  Inc.*,
  171 Cal. App. 4th 939 (2009)..............................................................................26

*Khoury v. Maly's of Calif.*,
  14 Cal. App. 4th 612 (1993)................................................................................25

*Kline v. Turner*,
  87 Cal. App. 4th 1369 (2001)..............................................................................16

*Krantz v. BT Visual Images*,
  89 Cal. App. 4th 164 (2001)................................................................................25

*Lazar v. Superior Court*,
  12 Cal. 4th 631 (Cal. 1996)................................................................................20

*LiMandri v. Judkins*,
  52 Cal. App. 4th 326 (1997)................................................................................24

*Magnesystems Inc. v. Nikken Inc.*,
  34 USPQ2d 1112 (C.D. Calif. 1994), *aff'd*, 61 F.3d 919 (Fed. Cir.
  1995).......................................................................................................................6

*Moreno v. Sanchez*,
  106 Cal. App. 4th 1415 (2003)............................................................................16

*Norgart v. Upjohn Co.*,
  21 Cal. 4th 383 (1999).........................................................................................14

*Pannu v. Iolab Corp.*,
  155 F.3d 1344 (1998)...................................................................................5, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

iv

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Price v. Symsek,*
  988 F.2d 1187 (Fed. Cir. 1993) ........................................................ 5, 11

*Rawlplug Co., Inc. v. Hilti Aktiengesellschaft,*
  777 F. Supp. 240 (S.D.N.Y. 1991) ........................................................ 11

*Rival Mfg. Co. v. Dazey Products Co.,*
  358 F. Supp. 91 (W.D. Mo. 1973) ........................................................ 11

*Rubin v. General Hospital Corp.,*
  2011 U.S. Dist. LEXIS 45859 (D. Mass. 2011), *aff'd*, No. 2011-
  1439 (Fed. Cir. 2013) .............................................................. 12, 13

*Sagehorn v. Engle*
  141 Cal.App.4th 452 (2006) ........................................................ 15

*Silvaco Data Systems v. Intel Corp.,*
  184 Cal. App. 4th 210 (2010) ........................................................ 26

*Sontag Chain Stores Co. Ltd. v. National Nut Company of California,*
  310 U.S. 281 (1940) ................................................................ 17

*St. Joseph Solutions v. Microtek Medical, Inc.,*
  2011 U.S. Dist. LEXIS 136192 (S.D. Ohio 2011) ................................ 9

*Stark v. Advanced Magnetics, Inc.,*
  119 F.3d 1551 (Fed. Cir. 1997) ........................................................ 12

*Stern v. Trustees of Columbia Univ.,*
  434 F.3d 1375 (Fed. Cir. 2006) ........................................................ 5

*Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.,*
  7 F.3d 1434 (9th Cir. 1993) ........................................................ 25

*Thomson S.A. v. Quixote Corporation and Disc Manufacturing, Inc.,*
  166 F.3d 1172 (Fed. Cir. 1999) ........................................................ 11

*Trovan, Ltd. v. Sokymat Sa,*
  299 F.3d 1292 (Fed. Cir. 2002) ........................................................ 8

*University of Colo. Found., Inc. v. American Cyanamid Co.,*
  196 F.3d 1366 (Fed. Cir. 1999) ........................................................ 25

*Va. Elec. & Corp. v. Nat'l Serv. Indus., Inc.,*
  230 F. 3d 1377 (Fed. Cir. 2000) ........................................................ 12

**Katten**
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

v

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ...................................................................23

*Wine Railway Appliance Co. v. Enterprise Railway Equipment Co.*,
  297 U.S. 387 (1936) ...................................................................................17

**Statutes**

35 U.S.C. § 102(f) ...........................................................................................5

35 U.S.C § 122 ...............................................................................................18

35 U.S.C. § 135 ........................................................................................12, 19

35 U.S.C. § 256 ....................................................................................*passim*

Cal. Bus. & Prof. Code § 17200 ....................................................................25

Cal. Bus. & Prof. Code § 17208 ....................................................................14

Cal. Civ. Code § 3426 ..............................................................................14, 26

Cal. Code Civ. P. § 338(d) .............................................................................14

Cal. Code Civ. P. § 339 ..................................................................................14

**Rules**

Fed. R. Civ. P. 8 .............................................................................................22

Fed. R. Civ. P. 9(b) ................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ..............................................................................1, 4

**Regulations**

37 C.F.R. 1.211 ..............................................................................................18

**Other Authorities**

S. Rep. No. 82-1979, at 7-8 (1952), reprinted in 1952 U.S.C.C.A.N.
  2394 ...........................................................................................................11

USPTO Official Gazette Notice, 1249 OG 83 (Aug. 21, 2001) .....................18

USPTO Press Release, 00-72 (Nov. 27, 2000) ...............................................18

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

In this case, Plaintiff Gregg Klang ("Klang") seeks the patent rights to long-ago patented inventions that he did not invent.  But setting that aside, even by his own fanciful account set out in the First Amended Complaint[1] —in a story that rivals Washington Irving's "Rip Van Winkle"— Klang abandoned the rights to any invention he may have had by sleeping on them for well over  a decade.  Having long lost any chance of getting a patent at the United States Patent and Trademark Office ("USPTO") on whatever he claims he invented, Klang now brings this correction-of-inventorship / fraud combination suit in a last-ditch effort to seize the rights of two patents issued and assigned to the defendants by asserting that he is the sole inventor and owner of *all inventions* claimed in those patents.  Defendant Pflueger, the real inventor of the invention described and claimed in these two patents has invested considerable resources and time into developing, diligently prosecuting, shaping and reshaping the scope of the patent claims, and validly obtaining these patents at the USPTO.  Throughout those many years, Defendants never spoke or interacted with Klang.

By his own admission, had Klang not started working in the medical devices field in 2012 and not stumbled upon a commercial product he alleges resembled his 1999 invention, he would have never pursued either a patent for his idea that he slept on for so many years or this obstreperous action.  Instead, Klang makes the extraordinary claim that his utter lack of attention to—indeed, his forgetting about—his purported invention was the sole fault of defendants Pflueger and Bacich, blaming them for allegedly tricking him into not pursuing a patent after he communicated his idea to them on a napkin at a party some fourteen years ago.

---

[1] A true and correct copy of Plaintiff's First Amended Complaint is attached hereto as Exhibit A.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Klang's failure to act on his fourteen year old "invention" is nobody's fault but his own.  The Court should not allow Klang to now pursue rights that he relinquished.

But this case need not waste the Court's and parties' resources beyond this initial pleading stage.  That is because Klang's Amended Complaint incurably fails to state a claim for each of his eight counts under Fed. R. Civ. P. 12(b)(6)—and it fails even after the defendants gave Klang a roadmap to cure the many deficiencies in his original Complaint.  Klang's claim for correction of inventorship fails for at least the five reasons set forth below.   All of his related state law claims are barred by their respective statutes of limitation.  Klang's claims on fraud also fail to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) (hereinafter, "Rule 9(b)").  The many glaring deficiencies on his failure to state actionable claims, failure to plead with particularity, and untimeliness expose Klang's attempt to exploit the defendants' hard-earned rights as ultimately futile and desperate, as no remedy in law or equity exists to provide the egregious outcome he seeks.  Accordingly, this Court should dismiss all counts in the Amended Complaint with prejudice.

## II.      STATEMENT OF UNDISPUTED FACTS

### A.      Procedural History

This lawsuit centers on patent rights that stem from an application that Pflueger filed on Mar. 8, 2002.  The application was published on Sept. 26, 2002, and issued as U.S. Patent No. 6,673,023 ("the '023 Patent") on Jan. 6, 2004.  (RFJN, Exh. 1).  The second application, claiming priority to the first, was filed on Jul. 30, 2007, published on Mar. 13, 2008, and issued on Sept. 22, 2009 as U.S. Patent No. 7,591,790 ("the '790 Patent") (the "023 and "790 patents, hereinafter "the Patents at Issue").  (RFJN, Exh. 2).  Pflueger is named the inventor of the patents and assigned both to co-defendant Stryker Puerto Rico Limited, a subsidiary of co-defendant Stryker Corp.  (RFJN, Exh. 1, 2).

Klang filed his original Complaint on Dec. 19, 2013.  The Complaint was served on defendants Pflueger, Devonrex, Inc., and Pain Concepts, Inc. on Jan. 22,

2

2014, on defendant Stryker Corporation on Jan. 16, 2014, and on defendant Bacich on Feb. 18, 2014. Klang voluntarily dismissed the Complaint as to Stryker Corp. on Feb. 27, 2014 and filed the operative Amended Complaint on March 15, 2014, adding back defendant Stryker Corp. and further adding new defendant Stryker Puerto Rico Limited, the named assignee of the patents.

### B.    Allegations in the Amended Complaint

The Amended Complaint ( "Am. Compl.") alleges that Klang communicated his invention to Russell Pflueger and Steven Bacich "around late 1999 or early 2000," at an unspecified date during a party at Pflueger's home. (Amended Complaint ( "Am. Compl."), ¶¶ 26-32, 39). Klang claims to have informed Pflueger and Bacich that he was about to share a "private and confidential" idea for potentially forming a business partnership, and that based on an agreement, proceeded to describe his invention in "great detail," drawing a "complete recreation of his device" on a napkin. (Am. Compl., ¶¶ 28-29). Pflueger allegedly turned down Klang's proposal for a business relationship and "strongly discouraged" him from pursuing a patent. (Am. Compl., ¶¶ 34-35).

The Amended Complaint fast forwards twelve years and states that in 2012, Klang's new employment at a business for medical devices renewed his interest in "pursuing a patent again." (Am. Compl., ¶ 37). It states that Klang found online a device called the Stryker Dekompressor, which he claims was "the exact product that plaintiff disclosed to Pflueger and Bacich," and discovered on Stryker's website that Pflueger was named the inventor of "the Dekompressor patent." (Am. Compl., ¶¶ 39, 41). Klang says he "realized that Pflueger breached their oral non-disclosure agreement in 2000" and "filed fraudulent papers with the USPTO" claiming inventorship of his invention. (Am. Compl., ¶ 42). The Amended Complaint states that Pflueger transferred interest "in the Dekompressor patent" to Devonrex and Pain Concepts. (Am. Compl., ¶ 43), and that Stryker bought "the Dekompressor" from Devonrex and Pain Concepts for 10 million dollars and

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1   future royalties, and that "Devonrex and Pain Concepts assigned their ownership

2   interest in the [Dekompressor] patents" to Stryker.  (Am. Compl., ¶¶ 48-49).

3   **III.    LEGAL STANDARDS**

4            To survive dismissal, a complaint must allege "enough facts to state a claim

5   to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

6   570 (2007).   A complaint must establish more than a "sheer possibility" that its

7   claims are true.   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).   On a Rule

8   12(b)(6) motion to dismiss, all facts must be interpreted in the light most favorable

9   to the plaintiff.   *Twombly*, 550 U.S. at 556.   While "heightened fact pleading of

10  specifics" is not required for claims other than fraud, a plaintiff must allege facts

11  sufficient to "raise a right to relief above the speculative level."  *Id.* at 555.

12           Rule 9(b) imposes a heightened pleading standard for claims based on fraud:

13  "a party must state with particularity the circumstances constituting fraud or

14  mistake."   The claim must identify "the who, what, when, where, and how of the

15  misconduct charged," and "what is false or misleading about [the purportedly

16  fraudulent] statement, and why it is false."  *Ebeid ex rel. United States v. Lungwitz*,

17  616 F.3d 993, 998 (9th Cir. 2010).

18  **IV.    ARGUMENT**

19       **A.    Klang's Correction of Inventorship Claim under 35 U.S.C. § 256**

20              **(Count 1) Should Be Dismissed for Failure to State a Claim**

21           In Count 1, Klang attempts to avail himself of 35 U.S.C. § 256 in order to

22  substitute Pflueger for himself as the sole named inventor of the two Patents at

23  Issue.   Klang argues that Pflueger should not have been named the inventor of

24  these patents because "he did not contribute in any way to the conception of the

25  invention, which is the subject matter of [the patents]."   (Am. Compl., ¶ 56).

26  Klang alleges, rather, that he was "wholly responsible" for the conception and

27  design of the invention "which was the subject matter of [the patents]."   (Am.

28

**Katten**

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

4

Compl., ¶ 55).  Klang's allegations that he is the true, sole inventor of the patents and that Pflueger stole the invention present a claim of "derivation of invention."

Historically, derivation of invention claims have primarily occurred in two contexts: (1) to determine inventorship in an interference proceeding before the USPTO, and (2) to invalidate a patent under 35 U.S.C. § 102(f) in district courts.[2] For the latter, 35 U.S.C. § 256 was considered a "savings provisions" from invalidation: "[i]f a patentee demonstrates that inventorship can be corrected as provided for in *section 256*, a district court must order correction of the patent, thus saving it from being rendered invalid . . . ." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (1998).  Both fora apply the same clear and convincing standard to prove the two elements of derivation claim. In the seminal case on derivation, *Price v. Symsek*, the Federal Court stated: "[t]o prove derivation in an interference proceeding, the person attacking the patent must establish prior conception of the claimed subject matter and communication of the conception to the adverse claimant."; *See Price v. Symsek*, 988 F.2d 1187, 1190 (Fed. Cir. 1993)).  Likewise, "to prove derivation under § 102(f), 'the party asserting invalidity must prove both prior conception of the invention by another and communication of that conception to the patentee' by clear and convincing evidence". *Gambro Lundia AB v. Baxter Healthcare*, 110 F.3d 1573, 1576 (Fed. Cir. 1997); *See, also, Bd. of Ed. ex rel. Florida State Univ. v. Am. Bioscience, Inc*., 333 F.3d 1330, 1337 (Fed. Cir. 2003); *Hedgewick v. Akers*, 497 F.2d 905, 908 (CCPA, 1974).  It is well established that corroboration of an inventor's own testimony is required for both the conception and communication prongs of a derivation claim.  *Price*, 988 F.2d at 1190 ("An inventor's testimony, standing alone, is insufficient to prove conception—some form of corroboration must be shown.");  *Stern v. Trustees of Columbia Univ*., 434 F.3d 1375, 1378 (Fed. Cir. 2006).  As with conception, corroboration is required to

2020 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

**Katten**

KattenMuchinRosenman LLP

---

[2] Before the 2012 Leahy-Smith America Invents Act ("AIA") of 2012 removed 35 U.S.C. § 102(f), the statute recited: "A person shall be entitled to a patent unless… (f) he did not himself invent the subject matter sought to be patented."

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

support a claimant's testimony regarding communication of the invention. *Price*, 988 F.2d at 1190; *Davis v. Reddy*, 620 F.2d 885, 889 (CCPA 1980).

For at least the following five independent reasons, Klang fails to state a plausible claim for relief for his Section 256 claim under Count 1.

### 1. Klang fails to allege facts showing conception of invention

Conception is described as "the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998). The Amended Complaint falls short because: (1) it fails to tie Klang's alleged conception to any patent claim, and (2) it fails to tie his alleged conception to all the patent claims.

First, Count 1 alleges that Klang conceived of "the invention…which was the subject matter of [the patents]." (Am. Compl., ¶ 56). This general statement however fails to allege, that Klang conceived of any invention *as specifically set forth in any claim in the patents at issue*. But it is the claim in a patent that defines an invention, not the generalized subject matter of a patent. *See Magnesystems Inc. v. Nikken Inc.*, 34 USPQ2d 1112, 1113 n.1 (C.D. Calif. 1994), *aff'd*, 61 F.3d 919 (Fed. Cir. 1995) ("A patent claim defines in words the boundaries of an invention. The claim advises the public what the invention is, so that the public can avoid infringing upon it."). The Amended Complaint does not provide a claim chart or even identify a single patent claim as embodying the invention he wants inventorship of. Rather, he describes his invention as generally including: (1) a cannula, (2) an Archimedes screw within the cannula that engages tissue, (3) a handle, (4) a battery-operated motor with an activation switch, (5) minimally invasive, single, disposable use qualities, and (6) the possibility of use for biopsies, quantitative purposes or other medical applications. (Am. Compl., ¶¶ 29-32). By contrast, and merely by way of example, claim 1 of the '023 Patent recites:

> 1. An apparatus for removing material from a target area of a breast of a human or an animal, the apparatus comprising:

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

a handpiece;

a cannula including a proximal end portion structured to be coupled to the handpiece and an open distal tip structured to be laced in a target area of a breast of a human or an animal, the cannula being structured to be manually deformable; and

a rotational element structured to be operatively coupled to source of rotational energy, the rotational element disposed at least partially in the cannula and cooperatively engaged therewith and being structured to form a source of suction effective to at least assist in drawing material from the target area of a breast into the cannula in response to rotation of the rotational element.

[RFJN, Exh. 1.]

Thus, the Amended Complaint fails to allege that Klang's "invention" included elements and structural relationships specifically defined in claim 1. No facts are pled to show that his "invention" included, among things, a "manually deformable" cannula having "an open distal tip structured to be laced in a target area of a breast," or a rotational element and cannula structured to form "a source of suction," as recited in claim 1. Klang's assertions that he had conceived of the general "subject matter" of the patents are simply not sufficient as a matter of law to support a theory that he conceived of any invention *as claimed*. Even if the "subject matter" he believes he invented was generally disclosed by the patents but not claimed, such a disclosure alone would not be sufficient to show inventorship. *Davis v. Uke*, 27 USPQ2d 1180, 1182 (Comm'r Pat. & Trademarks 1993) ("That there may be common inventorship of an invention which is 'described' in an application is irrelevant. The relevant question is who invented the subject matter of the count [in the interference] and/or the claims corresponding to the count."). Indeed, this is the very reason a challenger in any interference proceeding— priority or derivation disputes—must file a patent *claim* to invoke the interference. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1367 (Fed. Cir. 2004).

Second, Klang only alleges that he conceived of "the invention" in the singular. Even if any specific claim in the patents defined or "mapped onto" the single idea that Klang describes in his Amended Complaint—which it does not—

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

7

his claim for relief still fails because to state a claim for changing the name on an entire patent, he must—but does not—allege conception of each invention claimed in the patents.  The two patents together recite seven independent claims and a total of sixty claims, each defining a different invention.   Indeed, "inventorship is determined on a claim-by-claim basis."  *Gemstar-TV Guide International, Inc. v. U.S. Int'l Trade Comm'n*, 383 F.3d 1352, 1381 (Fed. Cir. 2004); *Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1302 (Fed. Cir. 2002) ("[A]n inventorship analysis, like an infringement or invalidity analysis, begins as a first step with a construction of each asserted claim to determine the subject matter encompassed thereby.").  For example, the '023 Patent claims many inventive features including, among things: a cannula having an outer diameter that is "no greater than about 5 mm" (claim 9), or "no greater than about 2 mm" (claim 10); a rotational element with a distal portion that extends a distance of "about .02 inches to about 1 inch beyond the open distal tip of the cannula," (claim 8); and a cannula having an open distal tip that "is beveled or is substantially perpendicular with respect to a longitudinal axis of the cannula" (claim 11).  The '790 Patent defines various other inventions.  But, Klang has not pled a single fact suggesting he had conceived of, for example, the appropriate thickness of the cannula, the appropriate length of the Archimedes screw, the distances of parts relative to each other, or other features claimed in the patents.  Each invention embodied in the claims has been deemed novel and non-obvious over the prior art of record.  Klang's failure to plead facts showing he conceived of each invention is fatal, particularly given his baffling assertion that he be named the ***sole*** inventor of all sixty inventions claimed in the patents.

Just as Klang failed to plead facts showing that he had conceived of all sixty claimed inventions, let alone a single claimed invention, he also failed to plead any facts showing that Pflueger did ***not*** contribute to any of the inventions as to allege to remove him as an inventor.  "A contribution to one claim is enough" to assert joint inventorship.  *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456,

**Katten**

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

8

1460 (Fed. Cir. 1998). Indeed, the level of conception necessary to support a claim for *sole* inventorship of a patent has been held to a stricter standard than for joint inventorship. *See Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma*, S.A.S., 771 F. Supp. 2d 32, 38-40 (D.D.C., 2011) (dismissing claim for sole inventorship because plaintiffs failed to allege conception of an idea that was "so clearly defined" that it could be reduced to practice without extensive research, but upholding claim for joint inventorship on the same facts). Taking all facts alleged as true, Klang still failed to plead facts that sufficiently show his conception of the patented inventions. For this reason alone, Count 1 must be dismissed.

### 2. Klang fails to allege facts showing corroboration of conception

Klang alleges that he "reduced his handheld medical device concept to a complete and all-encompassing design," and when he amended his original Complaint, he added that he further "documented the design for his invention in a notebook," and that each page of the notebook was dated and signed by a witness. (Am. Compl., ¶ 20). As discussed, Klang failed to plead any facts showing that he conceived of any invention as specifically claimed in the patents. He also failed to plead facts showing corroborating evidence of his conception. Taken most favorably to Klang, the sparse allegations in the Amended Complaint do not show the corroborating evidence required to state a claim of derivation. In *St. Joseph Solutions v. Microtek Medical, Inc.* (2011 U.S. Dist. LEXIS 136192, *33 (S.D. Ohio 2011), the Court held that plaintiff satisfied the requirement of pleading "corroborating evidence of conception" by pointing to an affidavit attached to the Complaint in which the plaintiff inventor detailed her contributions to the invention and to corresponding exhibits supporting her contributions. Unlike the specific, detailed corroboration provided by the plaintiff in *St. Joseph Solutions*, Klang has not pled any details on the contents of his purported documentation. For example, it is impossible to ascertain from the Amended Complaint whether the content in his invention "notebook": (1) represents the concept of Klang's

Katten

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

9

invention as he alleges elsewhere in the Amended Complaint, (2) shows less than his invention as alleged, (3) includes additional details about his invention not alleged, or (4) shows supporting figures.  Thus, it is impossible to determine from the minimal facts pled whether the purported documentation could even plausibly corroborate conception of his alleged invention, let alone the sole conception of any invention as ***claimed*** in the patents.  And, Klang pleads having documentation on a single purported invention—but not for ***each*** claimed invention in support of his claim for sole inventorship of the patents.  His failure to sufficiently plead corroboration of conception is a further reason that Count 1 should be dismissed.

### 3. Klang fails to allege facts showing communication of conception

For the reasons that Klang has failed to plead facts showing that he had conceived of the inventions specifically embodied in the claims of the patents, Klang has similarly failed to allege facts showing that he had communicated these claimed inventions to the defendants.  He alleges that he had communicated one particular idea to Pflueger and Bacich.  (Am. Compl., ¶¶ 28-32).  However, Klang has failed to plead any facts showing that he communicated to the defendants each or any of the inventions as specifically claimed in the '023 and '790 Patents.

### 4. Klang fails to allege facts showing corroboration of communication

As noted above, as with the conception element, corroboration is required to support an inventor's testimony regarding communication of invention in a derivation claim.  However, Klang has pled no facts indicating that he has even a scintilla of corroboration for his alleged communication to Pflueger and Bacich of any idea for an invention.  Corroborating evidence may take several forms.  Contemporaneous documents prepared by a putative inventor may serve to corroborate an inventor's testimony; oral testimony of someone other than the alleged inventor may also corroborate.  *Ethicon, Inc.,* 135 F3d at 1461.  The pleadings do not suggest that Klang would be able to produce any documents or

10

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

testimony of anyone other than himself to corroborate communication of his invention.  Indeed, there is no suggestion in the Amended Complaint that any person other than Klang, Pflueger and Bacich was present at the alleged dinner party to support Klang's testimony that he communicated his invention to the defendants.  "[T]he case law is unequivocal that an inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof."  *Price*, 988 F.2d at 1194; *See also Thomson S.A. v. Quixote Corporation and Disc Manufacturing, Inc.*, 166 F.3d 1172, 1176 (Fed. Cir. 1999) ("Thus, the corroboration rule is needed only to counterbalance the self-interest of a testifying inventor against the patentee."). Without any allegation that he would be able to provide independent support for his own claim of having communicated his invention, Klang has failed to state a claim for derivation.  For this additional reason, Klang should not be permitted to use Section 256 to address the alleged wrongdoing in this case.

### 5. Section 256 is inapplicable for complete substitution of inventors where, as here, the parties did not collaborate

Section 256 was enacted to addresses "mistake[s] in joining a person as a joint inventor" of an issued patent.  S. Rep. No. 82-1979, at 7-8 (1952), reprinted in 1952 U.S.C.C.A.N. 2394, 2401.  The purpose of Section 256 is to "encourage joint inventorship." *Ethicon, Inc. v. U.S. Surgical Corp.*, 954 F. Supp. 51, 54 (D. Conn. 1997), *aff'd* 135 F.3d 1456 (Fed. Cir. 1998).  Thus, courts have historically refused to apply Section 256 to the "complete substitution" of inventors.  *See Rawlplug Co., Inc. v. Hilti Aktiengesellschaft*, 777 F. Supp. 240, 243 (S.D.N.Y. 1991) (Section 256 is inapplicable in the absence of joint inventorship and "cannot be used to substitute one sole inventor for another."); *Rival Mfg. Co. v. Dazey Products Co.*, 358 F. Supp. 91, 101 (W.D. Mo. 1973) (Section 256 "is limited to correction of errors involving true joint inventorship, and does not contemplate or permit what would amount to substitution of an inventor entirely for another under

the guise of 'correction.'"); *Bemis v. Chevron Research Co.*, 599 F.2d 910 (9th Cir.1979); *Dee v. Aukerman*, 625 F. Supp. 1427, 1428 (S.D. Ohio 1986).  But, some courts have allowed complete substitution of inventors under Section 256. *See  Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1554 (Fed. Cir. 1997); *Va. Elec. & Corp. v. Nat'l Serv. Indus., Inc.,* 230 F. 3d 1377 (Fed. Cir. 2000).

The court in *Rubin v. General Hospital Corp.* reconciled these two lines of cases by noting that the purpose of Section 256 in encouraging joint inventorship[3] would not be served by allowing "complete substitution" of inventors when the parties have not "collaborated on the subject matter of the patents at issue," or "where they engaged in separate inventive efforts . . . and had not even the most minimal relationship or interaction."  *Rubin v. General Hospital Corp.*, 2011 U.S. Dist. LEXIS 45859, *39 (D. Mass. 2011), *aff'd*, No. 2011-1439 (Fed. Cir. 2013) (nonprecedential).   Rather, the proper channel to seek complete substitution of inventors, where there was no collaboration, is by a challenge to priority (*i.e.*, who was first to invent) in an interference dispute before the USPTO.  *Rubin*, 2011 U.S. Dist. LEXIS 45859 at *40.   Thus, the *Rubin* court cautioned against allowing an "independent researcher" to bring suit under Section 256 claiming to be the first to invent, as that would be beyond the statute's intended purpose and also defeat the purpose of 35 U.S.C.§135 and the USPTO's interference proceedings.  *Id. at* *26.

*Rubin* is persuasive here, because as in that case, Klang did not have a collaborative relationship with the defendants for his claim to fall within the ambit of the legislative intent of Section 256.  To the contrary, Klang reveals a complete absence of collaboration by stating that Pflueger turned down his proposal to start a business relationship over his idea, and he does not claim to have spoken to the defendants since.  (Am. Compl., ¶ 34).  Klang also does not plead a relationship

---

[3] Section 256 "is intended to encourage collaboration between and among inventors and correct the named inventors without the need to invalidate the patent," as the statute is "a "savings provision" to prevent patent rights from being extinguished simply because the inventors are not correctly listed." *Rubin*, 2011 U.S. Dist. LEXIS 45859 at *33, *26 (*citing Pannu*, 155 F.3d at 1349-50).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

with the defendants that is sufficiently interactive such that the derivation of his inventive idea would have even been plausible. The *Rubin* court's restraint in applying Section 256 to the complete substitution of inventors' scenarios, illustrate just how unreasonable it is for a putative inventor who has no meaningful interactions with a named inventor of a patent to maintain that he is yet so intimately familiar with all the particular inventions claimed in that patent as to be able to prove that he ***alone*** invented ***all*** inventions claimed in that patent. Rather, for patents in the pre-AIA era, the procedure for establishing inventorship between two parties who had not collaborated and who both claim to have conceived of a similar invention—as is the case here—is that they independently pursue patents for their own ideas. As the *Rubin* court noted, if an invention that two parties claim is substantially the same, the proper course of action would then be to initiate an interference proceeding—as Klang should have done—to determine who was first to arrive at that invention. Indeed, as the *Rubin* court highlighted, Klang's invoking Section 256 to complete substitution of inventors would also defeat the purpose of the USPTO's interference (now derivation) proceedings.

Klang's failure to patent his own idea, when he could have, or provoke an interference—both of which he is now barred from doing (*see*, *infra* at 20)—does not entitle him to avail himself of Section 256 whose purpose is to correct joint inventorship errors. The statute's reach should not be stretched to allow Klang to pursue the drastic remedy of being named sole inventor of ***all*** patent claims issued to Pflueger, without having collaborated or interacted with him on ***any*** of them.

For at least the foregoing reasons, Klang has not stated a claim for correction of inventorship that is plausible on its face. Thus, Count 1 should be dismissed.

## B.   Klang's Declaratory Judgment of Ownership Claim (Count 7) Should Be Dismissed

Klang's claim for ownership of the Patents at Issue is based solely on his allegation that he is the "sole inventor." (Am. Compl., ¶103). "At the heart of any

13

ownership analysis lies the question of who first invented the subject matter at issue, because the patent right initially vests in the inventor who may then, barring any restrictions to the contrary, transfer that right to another, and so forth." *Beech Aircraft Corp. v. Edo Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993); *See also Isr. Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) ([A]n invention presumptively belongs to its creator.) Thus, Klang's failure to plead facts showing that he is the *sole inventor* of the patents necessitates the conclusion that he has failed to plead facts showing that he is the *sole owner* of the patents. Accordingly, for at least the reasons set forth with respect to Klang's claim under Count 1, his claim under Count 7 should also be dismissed.

**C.     Counts 2-3, 6 and 8 Are Barred by Their Statutes of Limitations**

All of Klang's supplemental state law claims, governed by California law, are facially barred by their respective statutes of limitation.  Specifically, the statute of limitations for Counts 2 and 3 – oral breach of contract – is 2 years (Cal. Code Civ. P. § 339); Counts 4, 5 – fraud – is 3 years  (Cal. Code Civ. P. § 338(d)); Count 6 – unfair business practices – is 4 years (Cal. Bus. & Prof. Code § 17208); and Count 8 – misappropriation of trade secrets – is 3 years (Civ. Code § 3426). The general rule for the accrual of a claim is that the statute of limitations starts to run when "'the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises ...'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (citations omitted).  An exception is the "discovery rule," which postpones accrual until the plaintiff discovers, or has reason to discover, the cause of action.  *Id.*; *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).

When a complaint shows on its face that a claim is barred by the statute of limitations, a plaintiff must plead, with particularity, the reasons why the injury was not discovered until the later date.  *Id.* at 808.  The plaintiff must plead facts to show: (1) the time and manner of discovery, and (2) the inability to have made earlier discovery despite reasonable diligence.  *Id*.  The burden is on the plaintiff to

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

14

show diligence.  *Id*.; *Accord California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407 (9th Cir. 1995) ("[T]he burden is on [plaintiff] to plead and prove the facts necessary to toll the limitations period once it is established that it would have otherwise commenced."); *Gallardo v. DiCarlo*, 203 F. Supp. 2d 1160, 1169 (C.D. Cal. 2002) (refusing to apply discovery rule because plaintiff failed to plead specific facts addressing the time and manner of discovery and diligence).

The statute of limitations can also be tolled by an equitable doctrine based on fraudulent conduct, "so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud or other misconduct." *Sagehorn v. Engle* 141 Cal.App.4th 452, 460 (2006).

Here, the wrongful acts underlying Klang's claims of breach (Counts 2, 3), unfair business practices (Count 6), and trade secret violation (Count 8), allegedly occurred when: defendants Pflueger and Bacich failed to uphold their oral promise to keep Klang's invention a secret; Pflueger filed patent applications covering the invention and failed to name Klang as sole inventor.  (Am. Compl., ¶¶ 54-57, 63-64, 71, 76.)  These injuries would have occurred *at the latest* when the patent applications were filed without naming Klang an inventor—Mar. 8, 2002 for the '790 Patent, and July 30, 2007 for the '023 Patent.  Because the injuries forming the basis for Klang's state law claims arose more than four years before he filed the original Complaint on Dec. 13, 2013, all of these claims are facially time-barred.

As an initial matter, the Amended Complaint fails to expressly invoke the discovery rule exception and the Court should not automatically apply it to the claims.  Except where a statute specifically provides for delayed accrual (as with fraud claims), California courts have discriminately applied the discovery rule where a plaintiff is unable to see or appreciate a breach has occurred (*e.g*., trespass, products liability, latent defects in real property), or where the relationship between the parties is one of special trust such as a fiduciary, confidential or privileged

relationship.  *Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1423-25 (2003).[4]  Klang does not present a case in which the discovery rule has been traditionally applied. He has not pled facts showing he was in a fiduciary relationship with defendants, nor has he plausibly shown he was in a confidential or privileged relationship with them (*see*, *infra* at 24-25).  And unlike cases warranting the discovery rule because a breach was invisible to the eye, the facts forming the basis for Klang's claims were discoverable by the publications of the Patents at Issue (*see*, *infra* at 17-18).

But even if Klang had properly invoked the discovery rule, his claims would not have accrued as late as when he alleges that he actually discovered the operative facts (*i.e.*, via his online discovery of the patents in 2012), because he **had reason to discover them earlier**.  *Fox,* 35 Cal. 4th at 807 ("The "discovery rule". . . postpones accrual until a plaintiff discovers, or **has reason to discover**, the cause of action." (emphasis added)).  Where the discovery rule applies, plaintiffs are charged with presumptive knowledge of an injury if they have "information of circumstances to put a reasonable person on inquiry" or "'the opportunity to obtain knowledge from sources open to [their] investigation (such as public records or corporation books).'"  *Kline v. Turner*, 87 Cal. App. 4th 1369, 1374  (2001) (citations omitted).  Klang had reason to discover the facts earlier because: (1) an inventor exercising ordinary care would have had reason to discover them earlier, and (2) in any event, he had constructive notice as early as 2002.

First, a reasonable inventor would have discovered the facts earlier than Klang claims that he did.  It would be reasonable to expect an ordinary inventor to believe that his inventive ideas would be valuable contributions to the public and worth patenting.  It would likewise be reasonable to expect an inventor to be interested, and stay interested, in protecting his inventive ideas.  Such an ordinary inventor would stay interested in developments surrounding the field of his

---

[4] Examples of trusted relationships include those with licensed professions or tradespeople who have held themselves to have a level of skill required by statute, such as stockbrokers, insurance agents, accountants, physicians and attorneys.  *Id*.

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

invention, as widely accessible in the market, trade publications, academic literature, and the USPTO, or attempt to improve upon his original idea in response to evolving technologies.  Thus, an inventor exercising ordinary prudence would have kept abreast of advancements between the time that Klang allegedly arrived at his invention—in 1999/2000—to when he claims to have "began pursuing a patent again"—in mid-2012.  (Am. Compl., ¶ 37).  But, Klang pleads no facts showing that he paid any attention to his dormant intellectual property during that intervening period spanning over a decade.  An ordinary inventor simply would have had reason to discover the Patents at Issue, which allegedly disclose Klang's invention exactly, earlier than he did and as early as when the patents published.

Second, Klang could have easily discovered the facts giving rise to his claims as early as Sept. 26, 2002, when the application leading to the first of the patents at issue was published.  The U.S. Supreme Court has held that the issuance of a patent and its recordation in the USPTO constitutes notice to the world of its existence.  *Sontag Chain Stores Co. Ltd. v. National Nut Company of California*, 310 U.S. 281, 295 (1940); *Wine Railway Appliance Co. v. Enterprise Railway Equipment Co.*, 297 U.S. 387, 393 (1936).  District courts have held that issuance of patents provides constructive notice of claims based on fraud.  *See Int'l Bus. Machines Corp. v. Zachariades*, No. C 91-20419, 1993 WL 443409, at *2-3 (N.D. Cal. Oct. 27, 1993), *aff'd*, 70 F.3d 1278, 1995 (9th Cir. 1995) (unpublished).  Courts have also held that published patent applications provide constructive knowledge for starting the statute of limitations for claims based on fraud and misappropriation of trade secrets.  *See Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 425 (E.D. Va., 2011).  Since November 29, 2000, the USPTO has been statutorily mandated to publish patent applications eighteen months after their effective filing dates (RFJN, Exh. 3, 5).

Two separate events years apart placed Klang on constructive notice of the Patents at Issue: (1) when the applications for the Patents at Issue were published –

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

without naming Klang an inventor, Sept. 26, 2002 and Mar. 13, 2008, respectively, and (2) when the patents issued in Pflueger's name without naming Klang an inventor, Jan. 6, 2004, and Sept. 22, 2009, respectively.  (RFJN, Exh. 1 ('023 Patent cover page)), Exh. 2 ('790 Patent cover page)).  Klang had reason from these dates to discover all facts forming the basis for his claims.  But in all these dates fall outside the statute of limitations periods for all of Klang's state claims. Thus, even if the discovery rule is applied to extend the triggering of the statute of limitations from the time the alleged injury arose (when the patent applications were filed) to when Klang had reason to discover them (when the applications were published or issued), his claims would still be barred as untimely.

Having had reason as an ordinary inventor and with constructive notice to make earlier discovery, Klang's untimely claims cannot be saved because he has pled no facts showing (1) his diligence, and (2) his inability to have made earlier discovery despite such diligence, as required to apply the discovery rule.  And instead of providing any credible reason for his lack of diligence, Klang only states that his divorce incurred fees that financially burdened him from being able to "develop, pursue, or patent his invention." (Am. Compl., ¶ 36).  While this assertion may explain why Klang was unable to self-finance patenting his invention, it does not excuse his utter lack of diligence.  Indeed, just as Klang's actual discovery of the patents allegedly occurred via an internet search (Am. Compl., ¶ 38-42.), had Klang exercised even a small amount of diligence to search for patents in his field during his dozen or so years of inaction, he would have incurred no expenses because patents and published applications have been freely available online at www.uspto.gov since well before 2002.  Thus, financial hardship cannot be used to excuse Klang's failure to exercise reasonable diligence.

Klang's utter failure to exercise the ordinary prudence expected of a bona fide inventor underscores the serious inequity in the windfall he now seeks.  Even setting aside Pflueger's alleged misdeeds, Klang would have no basis in 2012 for

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

obtaining patent rights that he slept on for over a decade after conceiving his invention.  To be sure, myriad technical advancements in the medical devices field (or any technological field, for that matter), would serve as prior art against any patent applications Klang presumably would have filed in 2012.  Instructively, an interference or derivation proceeding before the USPTO challenging the priority of a substantially identical invention — the procedure Klang should have used — must be initiated within one year of the first publication of a claimed invention.  *See* 35 U.S.C. §135.  Thus, Klang is barred at the USPTO from pursuing the relief he now seeks.  There is simply no justification why Klang should now be entitled to a patent on any idea he may have conceived of fourteen years ago, in contradiction to long established rules, procedures and policies of the USPTO.

Finally, the statute of limitations for Klang's state law claims cannot be equitably tolled because of Pflueger's and Bacich's alleged fraudulent conduct.  Fraudulent concealment of the facts does not absolve a plaintiff from exercising diligence.  "To establish that equitable tolling applies, a plaintiff must prove the following elements: fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts."  *Federal Election Com'n v. Williams*, 104 F.3d 237, 240-241 (9th Cir. 1996).  As noted above, the Amended Complaint only shows a glaring absence of diligence.  Any theory of fraudulent concealment would also be undermined by the publications of the patent applications that led to the patents at issue, because the defendants could not have concealed information in applications made available to the world even if they wanted to. [5]

In sum, the discovery rule and equitable tolling principles cannot apply here, notwithstanding Klang's failure to invoke them.  Even if the Court did apply them,

---

[5] Klang's state law claims also cannot be tolled for fraudulent concealment for the reason that defendants owed no duty to disclose information (*supra* at 24-25).

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1  Klang has failed to plead any facts, let alone with particularity as required,

2  showing the diligence—indeed, any diligence—required to save his untimely

3  claims. Thus, his state claims under Counts 2, 3, 6 and 8 must be dismissed.

4       **D.**    **Klang's Claim for Fraud (Count 4) Fails to both State a Claim for**

5                **Relief,  and Meet the Standard of Rule 9(b)**

6      The following elements must be alleged to state a claim for fraud: "(a)

7  misrepresentation (false representation, concealment, or nondisclosure); (b)

8  knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance;

9  (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12

10  Cal. 4th 631, 638 (Cal. 1996).  Notwithstanding his insufficient allegations on the

11  defendants' misrepresentation, knowledge, and intent, Klang's failure to state a

12  claim for fraud based on his failure to show justifiable reliance is glaring.  He

13  alleges that he "reasonably relied" on the defendants' representations as they were

14  "more knowledgeable … about the process for obtaining patents and the medical

15  device field," and he "believed that defendants were in a better position him to

16  understand the burdens and benefits of obtaining or seeking patent protection."

17  (Am. Compl., ¶¶ 75-77).  He also alleges that his reliance on the defendants'

18  statements was the basis for why "he turned his attention elsewhere for many

19  years," which "prevented him from discovering defendants patents and related

20  fraud until recently."  (Am. Compl., ¶ 77).  These assertions are manifestly absurd.

21      Klang's reliance on the defendants for their being relatively more

22  knowledgeable about the process, benefits and burdens of obtaining a patent as the

23  basis for his inaction is not justifiable as a matter of law. The importance of

24  diligently securing patent rights is self-evident to any layperson and does not

25  require specialized training.  Klang does not allege that he sought information on

26  procedures in prosecuting a patent at the USPTO, anticipated fees, business and

27  legal strategies, or any information requiring specialized knowledge or training that

28  would justify his reliance.  A conversation over basic information cannot

**Katten**
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

20

reasonably justify "[turning] his attention elsewhere for many years."  And, the defendants' alleged promise to not disclose Klang's confidential information cannot excuse him for completely abandoning his invention for well over a decade. Thus, it should not be considered reasonable, ***as a matter of law***, for Klang to have surrendered all efforts toward independently protecting his own rights, in reliance on general statements and a cursory promise from individuals — with whom he claims no business or legal relationship beyond his alleged single encounter — to not disclose information.  *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (Cal. App. 1991) ("whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts").

Second, Klang's claim for fraud is barred by C.C.P 338(d)'s statute of limitations.  The three-year limitation in California for fraud does not begin to run until plaintiffs have actual or constructive notice of the facts constituting the fraud. *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980) (citations omitted). Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.  *Id.*; *FEC* v. *Williams*, 104 F.3d at 241 (holding that FECA's finance reporting requirements are, as a matter of law, sufficient to give FEC "notice of facts that, if investigated, would indicate the elements of a cause of action.").   As set forth above, Klang's fraud claim is untimely because he had constructive notice of the facts from the publications and issuance of the patents, which all fall outside the limitations period for fraud.

Finally, Klang's fraud claim fails to meet the pleading standard of Rule 9(b). He fails to plead with particularity the exact promises made and why the defendants' statements were false or misleading.  (Am. Compl., ¶¶ 28, 34).  For example, Klang suggests the existence of terms to a binding oral agreement, but he does not clearly identify those terms; nor does he plead any essential details to the purported agreement, such as its scope, consideration, or other critical provisions. (Am. Compl., ¶ 28).  He also fails to explain why the defendants' representations

21

Katten
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

about the "burdens" of obtaining a patent and "viability" of his invention were false or misleading. (Am. Compl., ¶ 76). He only alleges that Pflueger stated that the patent process would be "very long, arduous, and expensive," and that even if his invention was viable, "he would need the support of a large company." (Am. Compl, ¶ 35). But, Klang has pled no facts explaining why these statements were incorrect, untruthful or deceptive; he just summarily concludes that they were fraudulent. Conclusory statements such as these cannot even survive the lower pleading standard of Fed. R. Civ. P. Rule 8, no less the heightened standard of Rule 9(b). *Twombly*, 550 U.S. at 556 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Klang asserts vaguely that he disclosed his idea to defendants Pflueger and Bacich at a party "[a]round late 1999 or early 2000." (Am. Compl., ¶¶ 26, 39). This long passage of time should compel a more rigorous pleading of specificity to help the defendants recall this pivotal event. His failure to plead details to help identify a nondescript event from over fourteen years ago renders this claim gravely inadequate. The absence of a specific date, a description that could narrow the time of year, and other distinguishing details of the party environment, unreasonably deprives the defendants of adequate notice for defending against serious charges. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (The purpose of Rule 9(b) is "to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."). A heightened pleading standard is intended to avoid subjecting parties to exactly the type of harm and unjustified expense that Klang is causing the defendants here. As the Ninth Circuit warned, Rule 9(b) serves: "to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). But, with

Katten

Katten Muchin Rosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

22

this claim, Klang has done just that.  He is obligated but failed to plead facts with particularity; thus, his fraud claim must be dismissed as a matter of law.

**E.     Klang's Claim for Fraudulent Concealment (Count 5) Fails to both State a Claim for Relief, and Meet the Standard of Rule 9(b)**

The elements for fraudulent concealment are: "(1) the defendant concealed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant concealed or suppressed the fact with an intent to defraud; (4) the plaintiff was unaware of the fact and would have acted if he or she had known about it; and (5) the concealment caused the plaintiff to sustain damage." *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1011-12 (9th Cir. 2011).  A duty can arise in four ways: (1) by a fiduciary relationship between the parties; (2) if the defendant has exclusive knowledge of material facts unknown to the plaintiff; (3) if the defendant actively conceals a material fact from the plaintiff; or (4) if the defendant makes a partial representation to the plaintiff while suppressing other material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  Klang has failed to show that the defendants owed him a duty under any of these four bases.

The assertion that Klang "was in a fiduciary relationship with Pflueger and Bacich as ***potential*** business partners" is nonsensical.  (Am. Compl., ¶ 88, emphasis added).  Klang squarely contradicts himself by alleging that Pflueger "turned down plaintiff's proposal to enter into a business relationship"—thus extinguishing any potentiality in a partnership.  (Am. Compl., ¶ 34).  As his entire basis for a fiduciary relationship rests on a potential business relationship, the utter absence of the potential business relationship, as alleged, destroys his claim to a fiduciary relationship.   And, a contractual relationship does not automatically impose a fiduciary duty.  *Gilman v. Dalby*, 176 Cal. App. 4th 606, 614 (2009) ("a plaintiff cannot turn an ordinary breach of contract into a breach of fiduciary duty based solely on the breach of the implied covenant of good faith and fair dealing contained in every contract.").  Also, a fiduciary relationship is "not necessarily

23

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

created when one party entrusts valuable intellectual property to another for commercial development in exchange for the payment of compensation [that is] contingent on commercial success." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 391 (2008).  Thus, a fiduciary duty has not been shown.

Second, Klang has failed to allege that the defendants had exclusive knowledge, active concealment, or partial representation of the operative facts.  As set forth above, the fact that patent applications were filed and the information in those patents were available to Klang and the public from as early as 2002.  Klang simply fails to plead facts to show any credible basis for why the defendants would have owed a duty to disclose information to him.

Finally, Klang's claim for fraudulent concealment is barred by the statutes of limitations for claims based on fraud, and also fails to meeting the heightened pleading standard of Rule 9(b), for at least the same reasons set forth above with respect to Count 4.   For at least all these reasons, this claim should be dismissed.

**F.   Klang's Claim Under Unfair Business Practices (Count 6) Should Be Dismissed for Failure to State a Claim**

A claim under Cal. Bus. & Prof. Code § 17200 requires a plaintiff to "state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Calif.*, 14 Cal. App. 4th 612, 619 (1993).  But instead of pleading facts showing a specific violation of the statute, Klang merely incorporates allegations from other claims.  (Am. Compl., ¶ 96).  Each prong of the statute's prohibition of "any unlawful, unfair or fraudulent business act or practice" is a "separate and distinct theory of liability" and "applies separately to business acts or practices that are (1) unlawful, (2) unfair, or (3) fraudulent." *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1050 (E.D. Cal. 2010). Klang fails to allege on which prong of liability this claim is based.  This claim is then at best derivative, and must fail with the others as a matter of law. *Integrated Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal. App. 4th 515, 533 (2006) (when

**Katten**
KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

24

an unfair competition claim is based on other defective claims, it is also defective); *Krantz v. BT Visual Images*, 89 Cal. App. 4th 164, 178 (2001) (holding that the viability of a § 17200 claim "stands or falls" with underlying claims).

But even if Klang could avoid dismissal by failure to state a claim, this claim is based on a question of inventorship and would be preempted by the exclusive remedies of federal patent law. *Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys.*, 7 F.3d 1434, 1439 (9th Cir. 1993) (state unfair competition laws are preempted by federal patent law when they enter "a field of regulation which the patent laws have reserved to Congress"); *University of Colo. Found., Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("the field of federal patent law preempts any state law that purports to define rights based on inventorship"). For at least these additional reasons, this claim should be dismissed.

## G.     Klang's State Law Claims Under Counts 1-6 Are Preempted by the California Uniform Trade Secrets Act (Count 8)

California's Uniform Trade Secrets Act ("CUTSA") provides the exclusive remedy for trade secret misappropriation. *Silvaco Data Systems v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010).  CUTSA preempts all common law claims "based on the same nucleus of facts" as a claim for misappropriation of trade secrets. *K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009).  Klang's state law claims (Counts 2-6) are based on allegations that the defendants misappropriated Klang's confidential information and used it to obtain the patents.  (Am. Compl., ¶¶ 63, 70-71, 75, 96).  His claim for ownership in the patents (Count 7) also depends entirely on his claim of inventorship, which rests on his allegations of misappropriation.  Thus, Counts 2-7 are preempted by CUTSA for relating to trade secret misappropriation.

## CONCLUSION

For each of the foregoing reasons, this motion should be granted and Plaintiff's Amended Complaint should be dismissed with prejudice.

**Katten**

KattenMuchinRosenman LLP

2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel   310.788.4471 fax

1

Dated: April 25, 2014                          KATTEN MUCHIN ROSENMAN LLP

2

3                                              By:   /s/ Jeffrey A. Finn

4                                                    Jeffrey A. Finn
                                               Attorneys for Defendants D. RUSSELL
5                                              PFLUEGER, DEVONREX, INC., PAIN
                                               CONCEPTS, INC., and STEVEN BACICH
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

EXHIBIT A

THYBERGLAW
GREGORY A. THYBERG SBN102132
PETER G. THYBERG SBN278271
8789 AUBURN FOLSOM RD., SUITE C337
GRANITE BAY, CALIFORNIA 95746
TEL: (916) 204-9173
greg@thyberglaw.com

ATTORNEYS FOR PLAINTIFF, GREGG KLANG

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGG KLANG | Civil Action No. SACV13-01971 JVS (DFMx) |
| Plaintiff, | |
| vs. | PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT |
| D. RUSSELL PFLUEGER, an individual, STEVEN BACICH, an individual; DEVONREX, INC. a corporation; PAIN CONCEPTS, INC., a corporation; STRYKER CORPORATION, a corporation, and STRYKER PUERTO RICO, LIMITED, a corporation | 1. CORRECTION OF INVENTORSHIP 35 U.S.C. § 256 2. BREACH OF CONTRACT 3. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING |
| Defendants | 4. FRAUD 5. FRAUDULENT CONCEALMENT 6. UNFAIR BUSINESS PRACTICES BUSINESS & PROFESSIONS CODE § 17200 7. DECLARATORY JUDGMENT OF OWNERSHIP 8. VIOLATION OF UNIFORM TRADE SECRETS ACT CIVIL CODE § 3426 ET. SEQ. |

Plaintiff Gregg Klang ("KLANG") files this complaint against defendants, D. Russell Pflueger ("PFLUEGER"), Steven Bacich ("BACICH"), Devonrex, Inc. ("DEVONREX"), Pain Concepts, Inc. ("PAIN CONCEPTS"), Stryker Corporation ("STRYKER") and Stryker Puerto Rico Limited ("STRYKER LTD.") and alleges as follows:

## JURISDICTION AND VENUE

1.      This complaint alleges the following causes of action: Correction of Inventorship of a patent under 35 U.S.C. § 256, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Fraudulent Concealment, Unfair Business Practices Business & Professions Code § 17200, Declaratory Judgment of Ownership and Violation of the Uniform Trade Secrets Act Civil Code § 3426 et. seq.

2.      This action is under the Constitution of the United States Article 1, Section 8 as hereafter more fully appears. The jurisdiction of this court is founded on 28 U.S.C. § 1331 and 28 U.S.C. § 1338 (a).

3.      Venue is proper in this district under 28 USC 1391(b)(2) as a "substantial part of the *events or omissions*" giving rise to the claim occurred in this district.

## THE PARTIES

4.      Plaintiff, KLANG is an individual residing in California.

5.      Defendant, PFLUEGER is an individual residing in California.

6.      Defendant BACICH is an individual residing in Half Moon Bay, California.

7.      Defendant DEVONREX is a California corporation.

8.      Defendant PAIN CONCEPTS is a Delaware corporation.

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT        2
SACV13-01971 JVS (DFMx)

9.     Defendant STRYKER is a Michigan corporation.

10.     Defendant STRYKER LTD. is a corporation organized under the laws of the Republic of Ireland and is a wholly owned subsidiary of STRYKER.

## STATEMENT OF FACTS

11.     KLANG is a serial inventor and owner of two utility patents (one provisional) registered with the United States Patent Office.

12.     In 1998, KLANG conceptualized and designed a handheld medical device that utilized Archimedes screw technology to extract tissues from the human body. Plaintiff's device used an Archimedes screw inserted in a cannula.  Such a device could be inserted into the body and used to withdraw tissue that could not be withdrawn with a needle.

13.     Plaintiff surmised that such technology would have a myriad of medical applications, including simplifying biopsy procedures and extracting viscous materials previously impossible through a traditional medical needle.

14.     KLANG came up with his idea while working for Techcon Systems, ("TECHCON") a division of OK International, Inc. ("OK").  OK is a global manufacturer of bench tools, equipment, and related products that are used in electronics and industrial product assembly.  TECHCON was OK's flagship brand for selling dispensing systems and valves—including material-dispensing systems, specialized valves, and fluid dispensing products that utilized Archimedes Screw technology.

15.     As director of sales for TECHCON, plaintiff was familiar with the TECHCON product line, particularly their specialty valves.  These specialty valves were marketed directly to technology integrators who built dispensing equipment that utilized precision valves for material deposition.  A number of these valves utilized the

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT
SACV13-01971 JVS (DFMx)

3

Archimedes principle to dispense a precise amount of material on applicable substrates (i.e. printed circuit boards) during an electronic production process.

16.    During the production process of a circuit board, robots are used to dispense glue or other materials in a precise manner.  If these materials were dispensed through a hose using time and pressure to displace the material, it would be difficult to push the viscous material through the cannula in a controlled manner.  Namely, changes to the material's viscosity would result in inconsistent amounts of material being dispensed.  To overcome this problem, TECHCON's rotary valve products utilized Archimedes screw technology.  Specifically, the rotary valves used an auger to draw material through from a reservoir fed by a syringe and expelled through an appropriately sized cannula.  This enabled electronic manufacturers to dispense precise amounts of material in the manufacturing process.

17.    In 1998, plaintiff realized that Archimedes screw technology could have broad medical application.  Specifically, this technology could remove material from the human body that was not suitable for removal by conventional aspiration (air/suction) techniques.  Further, a device that utilized Archimedes screw technology would be an improvement over standard invasive techniques used to remove material by reducing trauma to the patient.  Such a device would provide a competitive marketing advantage to the appropriate device company seeking a less invasive solution to discectomy.

18.    Plaintiff's background in volleyball served as a catalyst for the device's conception.  Plaintiff, who played volleyball for several years, was aware of the sport's related injuries suffered by his fellow competitors.  Lower back injuries were a prominent and recurring problem within the sport.  Several of plaintiff's volleyball friends underwent treatment for such injuries; which often required removal of viscous material between the discs of a player's cervical or lumbar vertebrae.  Traditionally, the viscosity

of the material was too dense for an ordinary syringe to remove; thus, players would be required to undergo invasive surgery for its removal. Plaintiff's familiarity with TECHCON's Archimedes screw technology prompted an innovative solution to better treat such injuries.

19. To treat these injuries, plaintiff developed a handheld device that used an Archimedes screw implanted in a cannula. This could be inserted into the body to withdraw tissue that could not be withdrawn by a needle. Plaintiff then realized this device could have broader medical application beyond withdrawing spinal disc material; including conducting biopsies that traditionally required surgery.

20. In 1999, plaintiff reduced his handheld medical device concept to a complete and all-encompassing design. Plaintiff documented the design for his invention in a notebook and each page of this notebook was dated and signed by Dan Whelan as a witness on November 9, 1999.

21. Plaintiff met defendant PFLUEGER through his wife, Rebecca Pflueger ("REBECCA"). Plaintiff and REBECCA first met in the early 1990's when REBECCA worked for a METCAL distributor.

22. Beginning in 1990, Plaintiff assisted REBECCA and her associates in selling METCAL products, none of which utilized the Archimedes screw technology. Around 1993, REBECCA approached plaintiff about starting her own manufacturer representation company. REBECCA solicited plaintiff's assistance in obtaining exclusive manufacturers' representation of METCAL's product for the Southern California market. REBECCA wanted to use METCAL products as her anchor line. In response, Plaintiff secured REBECCA with exclusive manufacturer representation rights for METCAL in the Southern California market. This resulted in immediate income and a regional sales territory for REBECCA's new business. Plaintiff continued to assist

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT
SACV13-01971 JVS (DFMx)

5

1   REBECCA in her business until 1998, when Plaintiff was moved to OK's TECHCON

2   division.

3       23.     Around 1991, plaintiff became friends with REBECCA and her husband

4   PFLUEGER outside of work.  Through his friendship with REBECCA and PFLUEGER,

5   plaintiff also became an acquaintance of their friend, defendant BACICH.

6       24.     PFLUEGER is a chemical engineer who worked primarily with plastics and

7   other chemical compounds.  Through their friendship, plaintiff knew that PFLUEGER

8   was familiar with the patent process and had patented chemical compounds for a

9   cosmetic line he was trying to start.  Given PFLUEGER's background in the medical

10  device industry, Plaintiff knew that PFLUEGER was familiar with the process of

11  bringing a medical invention to market. Plaintiff believed that in developing his products,

12  PFLUEGER had experience with the Food and Drug Administration ("FDA") approval

13  process.  Plaintiff believed that PFLUEGER would appreciate the value of his invention

14  since PFLUEGER suffered from a bad lower back.  Although PFLUEGER had no

15  background in mechanical engineering, plaintiff thought that he would make a useful

16  business partner.  Specifically, as a potential business partner, PFLUEGER could help

17  plaintiff patent his medical device, navigate the subsequent FDA approval process, and

18  bring the medical device to market.

19      25.     Plaintiff also knew that his acquaintance and PFLUEGER's friend,

20  BACICH, worked for a medical device company and was familiar with the process of

21  bringing a medical invention to market.  Given his relationship with BACICH, and

22  BACICH's experience, Plaintiff surmised that BACICH would also make a useful

23  potential business partner.

24      26.     Around late 1999 or early 2000, plaintiff decided to approach PFLUEGER

25  and BACICH to discuss a potential business partnership regarding his medical device.

26

27

28

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT              6
SACV13-01971 JVS (DFMx)

While attending a dinner party at PFLUEGER's home, plaintiff approached PFLUEGER and BACICH with his proposal.  Plaintiff told PFLUEGER and BACICH that he wanted to form a partnership with them to help bring his invention to market.

27.  At the time plaintiff spoke to PFLUEGER and BACICH, he saw them as potential business partners.

28.  Prior to disclosing any details of his invention, KLANG explained that what he was going to discuss was private and confidential, and was not for public consumption.  Further, KLANG informed PFLUEGER and BACICH that he was sharing his invention for the purpose of potentially forming a business partnership. When KLANG asked whether PFLUEGER and BACICH agreed with these terms, PFLUEGER and BACICH verbally consented, stating words to the effect of "Sure, of course."

29.  Based upon this agreement, Plaintiff explained his invention in great detail. Plaintiff drew a complete recreation of his device on a napkin for PFLUEGER and BACICH.  The drawing depicted a long narrow tube or cannula capable of insertion into the human body.  Within the cannula, there was an Archimedes screw/auger/drill bit with one end protruding from the cannula.  When rotated, the Archimedes screw/auger/drill bit would engage tissue and shave away the targeted material.  This targeted material would be pumped up the shaft of the Archimedes screw, through the cannula, and away from the targeted area.  The targeted material would potentially be deposited into a small reservoir for disposal, biopsy, or quantitative purposes.

30.  The paper also listed the device's principal indications for use, including: removal of material from the lumbar area, and breast biopsies.  Plaintiff also noted that such device was not limited to these two procedures, but had broad medical application.

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT          7
SACV13-01971 JVS (DFMx)

31.    Plaintiff explained to PFLUEGER and BACICH that the Archimedes screw/auger/drill bit would terminate in the device's handle, where it would be attached to a small battery-powered motor with an activation switch.

32.    The key components of the device shown in the drawing included the tube, which housed the Archimedes screw; the Archimedes screw to engage, shave and pump material; the motor to turn the Archimedes screw; the battery to power the motor; and the switch to activate the motor. Plaintiff also explained that the device would be minimally invasive, single use, and disposable.

33.    Plaintiff's disclosure to PFLUEGER and BACICH was sufficient to enable one of ordinary skill in the art to reduce the medical device to practice.

34.    PFLUEGER turned down plaintiff's proposal to enter into a business relationship and strongly discouraged plaintiff from obtaining a patent or further pursuing the matter.

35.    PFLUEGER told plaintiff that the process of patenting, obtaining the proper testing data for FDA approval, and bringing the device to market would be a very long, arduous, and expensive process. PFLUEGER then told Plaintiff that even if the invention were viable, he would need the support of a large company.

36.    Shortly after plaintiff's disclosure to PFLUEGER and BACICH, plaintiff and his wife filed for divorce. The related attorneys' fees, litigation fees, and divorce settlement burdened plaintiff with significant financial hardship. As a result, plaintiff could not afford to further develop, pursue, or patent his invention. Consequently, plaintiff set aside his invention and took a job at Sprint.

37.    In mid-2012, plaintiff began working for MedPassage, which is an online marketplace for buyers and sellers of implantable medical hardware. To plaintiff's discovery, many of the devices listed on MedPassage were related to the spine. Excited

by this market, plaintiff pulled out his invention designs and began pursuing a patent again.

38.     Plaintiff made an online search to see whether a similar product had come to market during the intervening years.

39.     During his search, plaintiff found a medical product sold by defendant STRYKER called the "Stryker Dekompressor" ("DEKOMPRESSOR").  The DEKOMPRESSOR was the exact product that plaintiff disclosed to PFLUEGER and BACICH in late 1999/early 2000.  The DEKOMPRESSOR looked like plaintiff's invention, it operated like plaintiff's invention, its indication for use was the same as plaintiff's invention, and it included the same benefits and features as plaintiff's invention.

40.     STRYKER advertised the product as a single-use probe intended for percutaneous discectomies of the lumbar, thoracic, and cervical regions of the spine.  Also, STRYKER indicated that the DEKOMPRESSER utilized the Archimedes pump principle to remove this material.

41.     Upon further exploration of STRYKER's website, plaintiff discovered that PFLUEGER was named as the inventor on the DEKOMPRESSOR's patent.

42.     In 2012, plaintiff obtained the DEKOMPRESSOR patent from the USPTO and discovered that PFLUEGER was listed as the DEKOMPRESSOR's inventor.  Plaintiff realized that PFLUEGER breached their oral non-disclosure agreement in 2000; and had filed fraudulent papers with the USPTO by claiming inventorship of plaintiff's medical invention.  Plaintiff also realized that PFLUEGER strongly discouraged plaintiff from pursuing or patenting his medical invention because PFLUEGER intended to patent and market the device himself.

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT
SACV13-01971 JVS (DFMx)

9

43. Further, Plaintiff discovered that BACICH was listed as a witness on the DEKOMPRESSOR patent. BACICH also provided the USPTO with a fraudulent affidavit of invention that claimed PFLUEGER was the inventor.

44. Plaintiff is informed and believes and thereon alleges that PFLUEGER formed a Delaware corporation, PAIN CONCEPTS, and he filed papers registering PAIN CONCEPTS with the California Secretary of State on or about August 24, 2001.

45. Plaintiff is informed and believes and thereon alleges that PFLUEGER formed a California corporation, DEVONREX, and he filed papers registering DEVONREX with the California Secretary of State on or about February 21, 2002.

46. Plaintiff is informed and believes and thereon alleges that PFLUEGER transferred his ownership interest in the DEKOMPRESSOR patent to DEVONREX and PAIN CONCEPTS and that DEVONREX and PLFUEGER applied for the patent.

47. PFLUEGER did not transfer any actual ownership interest in the DEKOMPRESSOR patents to DEVONREX or PAIN CONCEPTS because PFLUEGER was not the inventor or owner these patents and since PFLUEGER was the president of these corporations, DEVONREX and PAIN CONCEPTS knew PFLUEGER had no ownership interest to assign. PFLUEGER could not transfer or assign better title than he possessed.

48. Plaintiff is informed and believes and thereon alleges that in October 2002, STRYKER purchased the DEKOMPRESSOR from DEVONREX and PAIN CONCEPTS for 10 million dollars with future potential royalty payments of up to 42.5 million dollars over the next 17 years based on the future sales growth of the DEKOMPRESSOR product.

49. Plaintiff is informed and believes and thereon alleges that STRYKER'S purchase of the DEKOMPRESSOR patents that DEVONREX and PAIN CONCEPTS

claimed to own was conducted through a transaction wherein DEVONREX and PAIN CONCEPTS assigned their ownership interest in these patents to a wholly owned subsidiary corporation of STRYKER, STRYKER LTD.

50.     STRYKER LTD did not obtain any actual ownership interest in the DEKOMPRESSOR patents because DEVONREX and PAIN CONCEPTS could not transfer or assign better title than they actually possessed.

51.     Plaintiff is informed and believes and thereon alleges that BACICH served on the board of directors of PAIN CONCEPTS and that he received financial compensation for providing the fraudulent affidavit in support of PFLUEGER'S patent application and that BACICH also received compensation when the DEKOMPRESSOR product line was sold to STRYKER.

52.     Plaintiff is informed and believes and thereon alleges that DEVONREX and PAIN CONCEPTS are corporate entities formed by PFLUEGER and BACICH to assist them in conducting the wrongful acts alleged herein and as such these corporate defendants are liable for the acts of PFLUEGER and BACICH and that PFLUEGER and BACICH are liable for the acts committed in the name of these corporate entities.

## COUNT 1
## CORRECTION OF INVENTORSHIP OF PATENT UNDER 35 U.S.C. § 256
### [Against All Defendants ]

53.     Plaintiff re-alleges the information set forth in Paragraphs 1-52 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

54.     PFLUEGER through his patent agents and attorneys filed applications with the USPTO for issuance of a patent for the DEKOMPRESSOR. The USPTO eventually granted PFLUEGER's patent application resulting in, but not limited to, US patent numbers 6,673,023 and US 7,591,790.

55.     Plaintiff was the person who was wholly responsible for the conception of the invention, and design of the invention, which was the subject matter of US patent numbers 6,673,023 and 7,591,790 as well as any associated intellectual property. Therefore, plaintiff should have been listed as the inventor on these patents.

56.     PFLUEGER'S name should not have been included on these patents because he did not contribute in any way to the conception of the invention, which is the subject matter of US patent numbers 6,673,023 B2 and 7,591,790 B2.

57.     KLANG was wrongfully not named as the inventor of the subject matter of US patent numbers 6,673,023 and 7,591,790.

58.     KLANG'S name was omitted without any deceptive intention on his part.

59.     The subject matter of US patent numbers 6,673,023 and 7,591,790 should be corrected to list KLANG, as the inventor and PFLUEGER'S name should be removed.

60.     KLANG should be accorded remedies due to him under U.S. patent law.

## COUNT 2
## BREACH OF CONTRACT
### [Against Defendant PFLUEGER, BACICH]

61.     Plaintiff re-alleges the information set forth in Paragraphs 1-60 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

62.     Plaintiff entered an oral contract with PFLUEGER and BACICH agreeing to share his invention in return for the defendants' promise not to publically disclose the details of his invention.

63.     Plaintiff shared his invention with defendants, and defendants breached the parties' agreement by stealing plaintiff's invention and disclosing it publicly.

64.     Defendants not only publicly disclosed plaintiff invention to others but further disclosed plaintiff's invention by filing a patent application with the details of plaintiff's invention and attempted to gain ownership of plaintiff's invention.

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT          12
SACV13-01971 JVS (DFMx)

65.  Based on the parties oral contract PFLUEGER and BACICH owed plaintiff a duty not to use or dislose the trade secrets and they breached that duty by engaging in the conduct alleged herein.

66.     Plaintiff pefromed his obligations under the contract by disclosing the details of his invention to defendants and as a result of each of these defendants' breach of contract as described herein, plaintiff has been harmed.

67.     As a result of each of these defendants' breach of contract as described herein, plaintiff has suffered and continues to suffer financial losses in an amount to be proven at trial.

## COUNT 3
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### [Against Defendant PFLUEGER, BACICH]

68.     Plaintiff re-alleges the information set forth in Paragraphs 1-67 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

69.     By law, plaintiff's oral contract with defendants contained  an implied covenant of good faith and fair dealing which required that a defendants not do anything to unfairly interfere with plaintiff's right to receive the benefits of the contract.

70.     Plaintiff peformed his obligations required by  his agreement with defendants by disclosing trade secrets and the details of his invention.

71.     Defendants breached their obligation to keep plaintiff's trade secrets and the details of his invention confidential by dislcosing the details of his invention publically and attempting to gain ownership of plaintiff's invention.

72.     As a result of denfendants wrongful conduct plaintiff was denied the benefit of his contract which included the right to keep his invention confidential, patent his invention, and to receive the economic benefit from his invention and trade secrets.

73.     As a result of each of these defendants' conduct as described herein, plaintiff has suffered and continues to suffer financial losses in an amount to be proven at trial.

## COUNT 4
## FRAUD
**[Against Defendants, PFLUEGER, BACICH, DEVONREX, PAIN CONCEPTS]**

74.     Plaintiff re-alleges the information set forth in Paragraphs 1-73 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

75.     Defendants PFLUEGER and BACICH made a false promises to plaintiff that if he disclosed his invention to them that they would not appropriate plaintiff's invention for themselves or disclose the details of plaintiff's invention publically. Plaintiff reasonably relied on these promises and he only disclosed his invention to defendants because he was relying on their misrepresentation that they would keep the details of his invention confidential.

76.     Defendants PFLUEGER and BACICH  fraudulently misrepresented the burdens and concealed the benefits of obtaining a patent. Defendants also misrepresented the  viablity and concealed the benefits of plaintiff's invention. Moreover, defendants engaged in this conduct with the intent to induce plaintiff to refrain from seeking patents on his invention so that they could seek patents on plaintiff's invention based on the confidential information he was disclosing.

77.     Plaintiff reasonably relied on defendant's fraudulent representations and as result he turned his attention elsewhere for many years which prevented him from discovering defendants' patents and related fraud until recenty.

78.     Plaintiff's reliance on defendants' representations was reasonable in light of the fact that defendants had work experience  that made them more knowlegable than plaintiff about the process for obtaining patents and the  medical device field. Plaintiff believed that defendants were in a better position than him to undertand the burdens and benefits of obtaining or seeking patent protection

79.     Defendants' promise not to misappropriate or disclose plaintiff's invention was essential to the parties agreement because the value in the information plaintiff disclosed was in the details of an invention that was not known to the public and that plaintiff could patent.

80.     When defendants promised not to publicly disclose or use plaintiff's invention, they did not intend to keep their promise to not publicly disclose or use this information.  Further, defendants intended to conceal the fact that they thought plaintiff's invention was viable, they would steal his information and patent his invention themselves.

81.     When defendants assured plaintiff that they understood plaintiff's invention was private and confidential and not for public consumption, they were making a promise to plaintiff that they intended for plaintiff to rely on.

82.     In disclosing the details of his invention, plaintiff reasonably relied on the promise of PFLUEGER and BACICH to keep his invention private and confidential and not to disclose the information regarding his invention publically.

83.     Defendants PFLUEGER and BACICH did not perform their promise, but rather stole plaintiff's conception for his invention and applied for and received a patent for plaintiff's invention based on a false application and affidavit claiming that plaintiff's invention was conceived by PFLUEGER.

84.     Plaintiff is informed and believes and thereon alleges that PFLUEGER formed DEVONREX and PAIN CONCEPTS to assist him in stealing plaintiff's invention and that these corporate defendants are also liable for the conduct of PFLUEGER and BACICH.

85.     As a result of defendants' conduct plaintiff has been harmed and continues to suffer harm as a result of defendants' illegal conduct, which has taken away his ability to patent his invention and receive the financial compensation he is entitled to from those who use his invention.

86.     As a result of each of these defendant's fraud as described herein, plaintiff has suffered and continues to suffer financial losses in an amount to be proven at trial.

## COUNT 5
## FRAUDULENT CONCEALMENT
### [Against Defendants, PFLUEGER, BACICH, DEVONREX, PAIN CONCEPTS]

87.     Plaintiff re-alleges the information set forth in Paragraphs 1-86 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

88.     Plaintiff was in a fiduciary relationship with PFLUEGER and BACICH as potential business partners.

89.     Defendants fraudulently filed a patent application for plaintiff's invention claiming that PFLUEGER was the inventor of the DEKOMPRESSOR.

90.     Defendants fraudulently concealed the benefits of plaintiff patenting his invention and that they thought plaintiff's invention was economically viable. Defendants futher concealed that they intended to seek patents based on the confidential information and trade secrets plaintiff had shared with them.

91.     Defendants PLFUEGER and BACICH actively concealed from plaintiff that they had stolen his invention by filing a fraudulent patent application wherein PFLUEGER claimed to be the inventor of the DEKOMPRESSOR.  Defendants further

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT          16
SACV13-01971 JVS (DFMx)

concealed the fact that they profited by assigning their claimed ownership interest in the patent for plaintiff's invention to STRYKER LTD and that defendants have earned and continue to earn royalties on plaintiff's invention.

92.     As plaintiff's potential business partners, and by virtue of the fact that they were in a confidential relationship with plaintiff because they agreed not to disclose the details of plaintiff's invention publically, defendants were under a duty not to conceal these facts from the plaintiff.

93.     Plaintiff is informed and believes and thereon alleges that PFLUEGER and BACICH used DEVONREX and PAIN CONCEPTS to assist them in concealing their fraud and as such these corporate defendants are also liable for the wrongful conduct of PFLUEGER and BACICH.

94.     Until early 2013, plaintiff was not aware of these facts.  Had plaintiff known of these facts he would have acted earlier to have his name put on the patent to make sure that he received the financial compensation that was due for the use of his invention.

95.     As a result of defendants' fraudulent concealment, plaintiff has been harmed and continues to suffer harm and has incurred financial losses in an amount to be proven at trial.

## COUNT 6
## UNFAIR BUSINESS PRACTICES BUSINESS & PROFESSIONS CODE § 17200
### [Against Defendants PFLUEGER, BACICH, DEVONREX, PAIN CONCEPTS]

96.     Plaintiff re-alleges the information set forth in Paragraphs 1-95 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT          17
SACV13-01971 JVS (DFMx)

97.     The fraudulent conduct of defendants PFLUEGER and BACICH violated California's unfair competition law as enumerated in Business and Professions Code § 17200.

98.     Defendants fraudulent patent application violated constitutional, statutory and regulatory provisions of the United States and the state of California including but not limited to 35 U.S.C. § 102 et seq. and California Civil Code § 3426 et seq.

99.     Defendants conduct was, unfair, unlawful, immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers.

100.    As a result of defendants' conduct, plaintiff has been harmed and continues to suffer harm and financial losses in an amount to be proven at trial.

herein.

## COUNT 7
## DECLARATORY  JUDGMENT OF  OWNERSHIP
### [Against All Defendants]

101.    Plaintiff re-alleges the information set forth in Paragraphs 1-100 above, and incorporates these paragraphs into this cause of action as if they were fully alleged herein.

102.    An actual controversy now exists between plaintiff and defendants as to the ownership of the DEKOMPRESSOR US patent numbers, 6,673,023 and 7,591,790.

103.    Plaintiff is the true owner of US patent numbers 6,673,023 and 7,591,790 as he is the sole inventor of these patents and plaintiff has not assigned, abandoned, or otherwise transferred or lost any of his ownership rights.

104.    Plaintiff's inventorship and ownership rights of US patent numbers 6,673,023 and 7,591,790 for the DEKOMPRESSOR belong to plaintiff and yet

defendants claim to own these patents and continue to use these patents without

plaintiff's permission.

105.   Plaintiff is entitled to a declaration between himself and defendants that he

is the owner of US patent numbers 6,673,023 and 7,591,790 for the DEKOMPRESSOR

and an order that defendants stop selling the DEKOMPRESSOR or any other products

derived from these patents for which KLANG is the rightful owner.

### COUNT 8
### VIOLATION OF UNIFORM TRADE SECRETS ACT CIVIL CODE § 3426 et seq.
### [Against Defendants PFLUEGER, BACICH DEVONREX, PAIN CONCEPTS]

106.   Plaintiff re-alleges the information set forth in Paragraphs 1-105 above, and

incorporates these paragraphs into this cause of action as if they were fully alleged

herein.

107.   The details of Plaintiff's invention was a trade secret not generally known

to the public or others, including those in the medical industry who could obtain

economic value from the disclosure or use of plaintiff's invention.

108.   Plaintiff made reasonable efforts to maintain the secrecy of the details of

his invention, which he owned.

109.   Defendants, PFLUEGER and BACICH, owed plaintiff a  duty not to use or

disclose the trade secrets plaintiff disclosed to them and they breached that duty by

engaging in the conduct alleged herein.

110.   DEVONREX and PAIN CONCEPTS are also liable for the wrongful

disclosure of plaintiff's trade secrets by virtue of the fact the the confidential nature of

this information was imputed to these defendants since PFLUEGER was the president of

these corporations at the time this information was disclosed and these corporations were PLFUEGER'S alter ego.

111.   Defendants misappropriated plaintiff's trade secret information and breached their obligation to keep the details of plaintiff invention confidential by applying for a patent and thus breaching their duty not to use or disclose plaintiff's trade secret without his consent.

112.   Defendants' conduct was willful and malicious and was in violation of the California Uniform Trade Secrets Act § 3426 et. seq.

113.   As a result of defendants' conduct, plaintiff has been harmed as he has lost the right to patent his invention or to derive the economic benefit from the sale of his invention.

114.   Defendants misappropriation of plaintiff's trade secrets has caused plaintiff irreparable harm and has unjustly enriched the defendants. Plaintiff continues to be irreparably harmed by defendants' conduct.

115.   Plaintiff is informed and believes and thereon alleges that defendants derived an economic benefit from the sale of plaintiff's invention and that they continue to receive payments from STRYKER LTD for its use plaintiff's invention.  As such, defendants have been unjustly enriched and plaintiff has been harmed.

WHEREAS, Plaintiff prays judgment against Defendants, and each of them based on their unlawful use of plaintiff's invention and trade secrets as follows:

1.   For a declaration that plaintiff is the true inventor of US patent numbers 6,673,023 and 7,591,790;

2.   For a declaratory judgment of ownership that plaintiff is the owner of US patent numbers 6,673,023 and 7,591,790;

3.   For a directive that the Commissioner of the USPTO issue a certificate of correction with regard to patent numbers 6,673,023 and 7,591,790 naming plaintiff as the inventor and removing PLFUEGER'S name as the inventor.

4.   That defendants be required to account to plaintiff for all gains, profits and advantages defendants have derived from the use of plaintiff's invention without his authorization.

5.   That defendants be required to relinquish to plaintiff all profits defendants have derived from the use of plaintiff's invention without his authorization.

6.   For Unjust enrichment damages.

7.   For a constructive trust including without limitation plaintiff's trade secrets, patent rights and the fruits of any benefits defendants have derived from the misappropriation thereof;

8.   For injunctive relief requiring that STRYKER and STRYKER LTD execute and assignment of all right title, and interest to any patents the court finds were stolen from plaintiff;

9.   For an injunction requiring that defendants refrain from asserting to third parties that they own or possess any other rights in those patents the court finds

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT          21
SACV13-01971 JVS (DFMx)

were stolen from plaintiff or that they otherwise take any action that would

cloud plaintiff's title to those patents;

10. For an injunction requiring that defendants refrain from dissipating their assets.

11. For general damages according to law and proof;

12. For special damages according law and proof;

13. For costs of suit;

14. For plaintiffs reasonable attorneys' fees as allowed by law;

15.  For statutory damages;

16. For exemplary and enhanced damages;

17.  For punitive damages;

18. For prejudgment interest according to law;

19. For such other and further relief as the court may deem proper.


DATED: March 14, 2014                    THYBERGLAW

                                         /s/ Gregory A. Thyberg___
                                         GREGORY A. THYBERG
                                         PETER G. THYBERG
                                         Attorneys for Plaintiff
                                         GREGG KLANG

PLAINTIFF GREGG KLANG'S FIRST AMENDED COMPLAINT            22
SACV13-01971 JVS (DFMx)

## DEMAND FOR JURY TRIAL

Plaintiff, Gregg Klang, respectfully demands a trial by jury as to all counts to which he is entitled a jury trial.


DATED: March 14, 2014                    THYBERGLAW

                                         /s/ Gregory A. Thyberg
                                         GREGORY A. THYBERG
                                         PETER G. THYBERG
                                         Attorneys for Plaintiff
                                         GREGG KLANG